Filed 5/13/24  P. v. Sarinana CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>FRANK ROBERT SARINANA,<br><br>  Defendant and Appellant. | B325420<br><br>(Los Angeles County<br>Super. Ct. No. VA152520) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lee W. Tsao, Judge.  Affirmed.

Richard Lennon and Alice Newman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Ana R. Duarte and Kenneth C. Byrne, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Frank Robert Sarinana appeals from a judgment entered after a jury convicted him of kidnapping, two counts of inflicting injury on a girlfriend or child's parent, assault with a firearm, possession of a firearm by a felon, delaying a peace officer, and making a criminal threat. Sarinana's sole contention on appeal is that the prosecutor committed *Griffin*[1] error when he told the jury in closing argument that the victim's testimony as to one of two alleged incidents was not contradicted or disputed. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Evidence at Trial*

1. *The August 9, 2019 incident*

Valerie Gonzalez testified that she was in an "off and on" relationship with Sarinana for two-and-a-half years and they had a daughter together. Gonzalez and her daughter lived with Gonzalez's grandmother. On August 9, 2019 Sarinana came to the home uninvited, and he found Gonzalez and the daughter in the daughter's room. Sarinana was angry because Gonzalez was pregnant with another man's child. Sarinana and Gonzalez argued, and Sarinana grabbed Gonzalez's left arm, leaving a bruise. According to Gonzalez, she was unable to get out of the room, but as she described, "my daughter had run out, so my daughter told my grandma and . . . ."[2] Gonzalez called the police,

---

[1] *Griffin v. California* (1965) 380 U.S. 609.

[2] Gonzalez did not finish her sentence because the prosecutor interrupted and asked a follow up question.

and police officers took photographs of Gonzalez's injury.[3]

### 2. *The January 3, 2020 incident*

On the night of January 3, 2020 Gonzalez and Sarinana got into an argument at Sarinana's family home. They went outside the house, where Sarinana punched and choked Gonzalez, causing her to lose consciousness. After Gonzalez regained consciousness, Sarinana pointed his shotgun at her and dragged her by her sweatshirt to a nearby public park. At some point, Sarinana fired his shotgun in the air and struck Gonzalez's arm with the shotgun barrel, causing bruises.

When they got to the park, among other things, Sarinana threw water on Gonzalez, removed her pants and sweatshirt, tied her wrist to a pole, then moved her and used a bike chain to tie her neck and wrist to a bench. Sarinana threatened to kill Gonzalez and her children. Sarinana took photographs of Gonzalez chained to the bench and sent one to his sister. Sarinana's family contacted the police, and a family member showed a police officer the photograph and Sarinana's message stating, "I'll fuck this bitch up." Police officers later found Sarinana near the park, hiding under a large tarp.

Sarinana did not call any witnesses.

## B. *The Verdicts and Sentencing*

The jury found with respect to the August 9, 2019 incident that Sarinana was guilty of inflicting injury on a person with whom he has or had a dating relationship or the parent of his

---

[3]     Gonzalez identified three photographs taken by police officers following the incident that showed the injury to her arm. The trial court later admitted the photographs into evidence.

child (Pen. Code, § 273.5, subd. (a); [4] count 9).  With respect to the January 3, 2020 incident, the jury found Sarinana guilty of kidnapping (§ 207, subd. (a); count 1); inflicting injury on a person with whom he has or had a dating relationship or the parent of his child (§ 273.5, subd. (a); count 2); assault with a firearm (§ 245, subd. (a)(2); count 3); possession of a firearm by a felon (§ 29800, subd. (a)(1); count 5); delaying a peace officer in the discharge of her office (§ 148, subd. (a)(1); count 8); and making a criminal threat (§ 422, subd. (a); count 10).

As to count 1, the jury found the allegation true that Sarinana personally used a deadly or dangerous weapon (the bike chain).  As to counts 1, 3, and 10, the jury found true that Sarinana was armed with a weapon, and that he personally used and intentionally discharged a firearm.  As to counts 1, 2, 3, 9, and 10, the jury found the allegation true that the crimes involved great violence, great bodily harm, threat of great bodily harm, or other acts of cruelty, viciousness, or callousness, and that Sarinana took advantage of a position of trust with the victim (as the boyfriend and father of the victim's child) to commit the crimes.  The trial court sentenced Sarinana to an aggregate term of 25 years in state prison.[5]

---

[4]     Further statutory references are to the Penal Code.  We refer to the counts as alleged in the information and reflected in the abstract of judgment, as do the parties.  Pursuant to the parties' stipulation, the trial court renumbered counts 8, 9, and 10 of the information as counts 6, 7, and 8 on the verdict forms to simplify the counts for the jury.

[5]     On count 1, the trial court imposed the middle term of five years for kidnapping plus a consecutive 20-year term for the firearm enhancement under section 12022.53, subdivision (c).

4

Sarinana timely appealed.

## DISCUSSION

A.    *The Prosecutor's Closing Argument*

The prosecutor told the jury in closing argument, "Now, what happened on August 9, 2019?  Well, the victim told you she was in her home and the defendant entered it without permission; he confronted her; she wanted to get away from him; she wanted to leave, and he got physical with her and he grabbed her by her arm and it resulted in that bruise that you can see on her arm.  That is count [9].  The August 9th incident, that is count [9], and *that testimony has not been contradicted or disputed in any way*.  There was no evidence presented to contradict that.  You've seen the photo.  You heard her tell all about it."  (Italics added.)

Sarinana's trial attorney did not object to the prosecutor's statements.

B.    *The Prosecutor Did Not Commit* Griffin *Error*

"'In [*Griffin v. California* (1965) 380 U.S. 609 (*Griffin*)] . . . , the United States Supreme Court held that the prosecution may not comment upon a defendant's failure to testify in his or her own behalf.  Its holding does not, however, extend to bar prosecution comments based upon the state of the evidence or

---

The court imposed concurrent middle terms of three years on counts 2, 5, and 9 and a concurrent term of 364 days in county jail on count 8.  The court stayed the sentences and firearm enhancements on counts 3 and 10 under section 654.

5

upon the failure of the defense to introduce material evidence or to call anticipated witnesses.'" (*People v. Thomas* (2012) 54 Cal.4th 908, 945; accord, *People v. Bradford* (1997) 15 Cal.4th 1229, 1339.) "At the same time, 'we have held that a prosecutor may commit *Griffin* error if he or she argues to the jury that certain testimony or evidence is uncontradicted, if such contradiction or denial could be provided *only* by the defendant, who therefore would be required to take the witness stand.'" (*People v. Gomez* (2018) 6 Cal.5th 243, 299; accord, *Thomas*, at p. 945.)

Sarinana forfeited his claim of *Griffin* error by failing to object to the prosecutor's statements that Gonzalez's testimony about the August 9, 2019 incident was uncontradicted. (*People v. Hughes* (2002) 27 Cal.4th 287, 372 [defendant "waived his right to complain of asserted *Griffin* error on appeal" by failing to object to the prosecutor's statements made in closing argument]; *People v. Mitcham* (1992) 1 Cal.4th 1027, 1050-1051 [any *Griffin* error forfeited "[b]ecause a timely objection and admonition would have cured any harm caused by these remarks"].)

Even if Sarinana did not forfeit the issue, there was no *Griffin* error. The daughter was present during the August 9, 2019 incident, then left and "told [Gonzalez's] grandma," but Sarinana did not call the daughter as a witness at trial. The daughter could have provided testimony that contradicted Gonzalez's testimony that Sarinana was angry, grabbed Gonzalez's arm, and left a bruise on her arm. Because Sarinana could have presented another witness other than himself to contradict or dispute Gonzalez's testimony, the prosecutor did not commit *Griffin* error by stating in closing argument that Gonzalez's "testimony has not been contradicted or disputed in

6

any way." (See *People v. Gomez, supra*, 6 Cal.5th at p. 299 [no *Griffin* error where prosecutor commented on defendant's failure to introduce evidence he read about murder from newspaper because defendant could have presented evidence that he was avid reader and subscribed to newspaper]; *People v. Hubbard* (2020) 52 Cal.App.5th 555, 566 [prosecutor did not commit *Griffin* error where "defendant could have presented other witnesses to support his counsel's version of events"].)

By contrast, in *People v. Vargas* (1973) 9 Cal.3d 470, 474, 476, relied on by Sarinana, the prosecutor argued there was no evidence to contradict a witness's testimony that she saw the defendant and codefendant at the scene of the robbery, and "'there is no denial at all that they were there.'" The Supreme Court concluded the prosecutor committed *Griffin* error because "only defendant himself could 'deny' his presence at the crime scene," and therefore, "the jury could have interpreted the prosecutor's remarks as commenting upon defendant's failure to take the stand and deny his guilt." (*Id.* at p. 476.) As discussed, Sarinana was not the only person who could dispute Gonzalez's testimony about the August 9, 2019 incident because Sarinana could have called the daughter to support his version of the incident.

## DISPOSITION

The judgment is affirmed.


FEUER, J.

We concur:


SEGAL, Acting P. J.


RAPHAEL, J.[*]

---

[*]    Judge of the San Bernardino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.